**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| United States of America,     ) | |
|                                        )  | **ORDER DENYING MOTION TO** |
|        Plaintiff,     ) | **REDUCE SENTENCE OR TRANSFER** |
|                                        ) | **TO HOME CONFINEMENT** |
| vs.     ) | |
|                                        ) | Case Nos.     2:08-cr-89-5 |
| Monique Marie Azure,     ) | 3:17-cr-262 |
|                                        ) | |
|       Defendant.     ) | |

Before the Court is Defendant Monique Marie Azure's "Motion for Compassionate release/(RIS) Reduction in Sentence under 18 U.S.C. § 3582(c)(1)(A)" filed on May 26, 2020. Case No. 2:08-cr-89-5, Doc. No. 401; Case No. 3:17-cr-262, Doc. No. 39.[1] The Government responded in opposition to the motion on June 8, 2020. Case No. 2:08-cr-89-5, Doc. No. 402. It is not entirely clear whether Azure seeks a reduction in her sentence to time served under 18 U.S.C. § 3582(c)(1)(A) (as the caption of the motion suggests) or a transfer to home confinement to serve the remainder of her sentence (as portions of the body of the motion seem to suggest). In light of Azure's *pro se* status, the Court will liberally construe the motion as requesting both types of relief.

**I.     BACKGROUND**

On August 20, 2008, the grand jury returned an indictment against six defendants, including Azure. Case No. 2:08-cr-89-5, Doc. No. 36. The indictment charged Azure with conspiracy to possess with intent to distribute and distribute a controlled substance, in violation of 21 U.S.C. §§ 841 and 846, and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841. Id. On October 16, 2008, Azure pleaded guilty to the conspiracy

---

[1] Azure filed an identical motion in both cases. The Court hereinafter cites to the record in Case No. 2:08-cr-89-5 for simplicity's sake when referencing her motion, the Government's response, and the sealed medical records.

charge pursuant to a plea agreement.[2]  Case No. 2:08-cr-89-5, Doc. No. 82.  On July 7, 2009, the Court[3] sentenced Azure to 108 months' imprisonment to run concurrently with a sentence imposed in Case No. 3:08-cr-51-10.[4]  Case No. 2:08-cr-89-5, Doc. No. 203.  She was also sentenced to four years of supervised release.  Id.

Azure began her term of supervised release on October 30, 2015.  Case No. 2:08-cr-89-5, Doc. No. 366.  On May 10, 2017, a second amended petition for warrant or summons for offender under supervision was filed, alleging nine violations of her conditions of supervised release:

| | | |
|---|---|---|
| 1.) | Standard Condition | **The defendant shall not commit another federal, state, or local crime:** On September 21, 2016, the defendant was cited for Possession of Paraphernalia (meth pipe) by the MN State Patrol in Todd County, MN. |
| 2.) | Standard Condition #1 | **The defendant shall not leave the judicial district without permission of the Court or probation officer:** On September 21, 2016, the defendant traveled to the district of MN, specifically Todd County without permission of the supervising officer. |
| 3.) | Standard Condition #9 | **The defendant shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer:** On September 21, 2016, she was associating with a convicted felon, Gilbert Vargas, without permission of her probation officer. |

---

[2] The possession charge was later dismissed upon motion of the Government.  Case No. 2:08-cr-89-5, Doc. No. 207, p. 1.

[3] The Honorable Ralph R. Erickson, then District Judge of the United States District Court for the District of North Dakota, now Circuit Judge of the United States Court of Appeals for the Eighth Circuit.

[4] In Case No. 3:08-cr-51-10, Azure was sentenced to 70 months' imprisonment on a separate drug-trafficking conspiracy charge.  Case No. 3:08-cr-51-10, Doc. No. 385.  The original term of imprisonment in that case has been fully served, but as will be noted later, she is currently serving a term of imprisonment on a revocation of her supervised release.

| | | |
|---|---|---|
| 4.) Special Condition #2 | | **The defendant shall submit to random drug and alcohol testing as directed by the supervising probation officer:** On November 30, 2016, the defendant failed to report to Centre, Inc. for a drug test. |
| 5.) Special Condition #1 | | **The defendant shall totally abstain from the use of alcohol and illegal drugs or the possession of controlled substances, unless prescribed by a licensed medical practitioner:** On December 9, 2016, an unannounced home contact was performed. The defendant tested positive for methamphetamines. She admitted to using methamphetamines on December 7th and December 8th of 2016. She also admitted to consuming alcohol on several occasions during her period of supervised release. |
| 6.) Standard Condition | | **The defendant shall not commit another federal, state, or local crime:** On January 13, 2017, the defendant was charged and arrested for Possession of Methamphetamine with Intent to Deliver, Possession of Methamphetamine Paraphernalia and Child Endangerment by the Cass County Drug Task Force. |
| 7.) Special Condition #1 | | **The defendant shall totally abstain from the use of alcohol and illegal drugs or the possession of controlled substances, unless prescribed by a licensed medical practitioner:** On January 13, 2017, the defendant admitted to this officer of recently using methamphetamines. During the attempt to conduct a drug test, the defendant was found to have a whizzinator on her person with urine, in an attempt to pass her drug test.<br><br>It should be noted that other whizzinators were found during a search of the defendant's residence conducted by U.S. Probation Officers. |
| 8.) Standard Condition | | **The defendant shall not commit another federal, state, or local crime:** On April 25, 2017, while law enforcement attempted to apprehend the defendant, she Fled in a Motor Vehicle and Resisted Arrest. |

| | |
|---|---|
| 9.) Standard Condition | **The defendant shall not commit another federal, state, or local crime:** Following the defendant's arrest, the Bureau of Alcohol, Tobacco, Firearms and Explosives obtained a search warrant and found ammunition in her vehicle on April 26, 2017. |

Id.

On October 23, 2017, Azure appeared before this Court[5] for a final revocation hearing. Case No. 2:08-cr-89-5, Doc. No. 395. She admitted to allegations 1, 2, 3, 4, 5, and 7. Id. at 1. After a contested evidentiary hearing, the Court found Azure guilty of allegations 6, 8, and 9 by a preponderance of the evidence. Id. The Court sentenced Azure to concurrent terms of 42 months' imprisonment in Case Nos. 2:08-cr-89-5 and 3:08-cr-51-10.[6] Id. at 2; Case No. 3:08-cr-51-10, Doc. No. 543, p. 2.

On November 15, 2017, the grand jury returned an indictment against Azure, charging her with one count of possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)—the same conduct described in allegation 8 of the supervised release petition. Case No. 3:17-cr-262, Doc. No. 1. She pleaded guilty to the indictment on February 23, 2018, pursuant to a plea agreement. Case No. 3:17-cr-262, Doc. No. 21. On May 14, 2018, this Court[7] sentenced Azure to 57 months' imprisonment to run concurrent with the sentence imposed in Case No. 2:08-cr-89-5. Case No. 3:17-cr-262, Doc. No. 28. The Court[8] later reduced her term of imprisonment to 48 months. Case No. 3:17-cr-262, Doc. No. 38.

---

[5] Judge Erickson also presided over the revocation proceedings.

[6] It appears that Azure has not made a compassionate release motion in Case No. 3:08-cr-51-10. See Case No. 2:08-cr-89-5, Doc. No. 401, p. 1 (identifying only Case Nos. 3:17-cr-262 and 2:08-cr-89-05).

[7] The Honorable Brian S. Miller, then Chief Judge of the United States District Court for the Eastern District of Arkansas, now District Judge of the United States District Court for the Eastern District of Arkansas, sitting by designation.

[8] By this point, the case had been reassigned to the undersigned judge.

The Bureau of Prisons ("BOP") placed Azure at FCI Waseca. Now 33 years old, Azure has a projected release date of March 14, 2021. Azure expresses concern about being exposed to the coronavirus in prison, claiming that she is at high risk because of a prior cancer diagnosis:

> Ms. Azure was diagnosed with cancer in late 2011. She has underwent surgery, [chemotherapy] and radiation in 2012. And has yet to be cleared by her Doctor. . . . This places Ms. Azure in the "at risk" [category] for [COVID-19]. With a [compromised] immune system from the cancer and [lymphedema] due [to] the cancer in the lymph-nodes. She fears that if this virus reaches her in this environment she will not be able to fight it.

Case No. 2:08-cr-89-5, Doc. No. 401, p. 4. Medical records confirm that Azure underwent surgery, chemotherapy, and radiation for cervical cancer; that she had lymph nodes removed from her abdomen and left leg; and that she has suffered from lymphedema in her left leg since at least May 2017. See generally Case No. 2:08-cr-89-5, Doc. No. 403. Importantly, in 2018, the oncology department determined that Azure did not need any additional post-cervical cancer surveillance as a five-year survivor. Id. at 127, 143. Records indicate that Azure has recently refused additional scans for cancer because she did not feel they were necessary past the five-year mark. Id. at 387, 420–21.

On April 2, 2020, Azure submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to the warden at FCI Waseca. Case No. 2:08-cr-89-5, Doc. No. 402-1, p. 4. The warden denied the request on May 14, 2020. Id. at 3.

**II.   DISCUSSION**

    **A.   Transfer to Home Confinement**

To the extent that Azure's motion requests transfer to home confinement, the motion fails. The Court lacks jurisdiction to consider requests for transfer to home confinement. See United States v. Brown, No. 12-cr-172(3) (SRN), 2020 U.S. Dist. LEXIS 69965, at *6 (D. Minn. Apr. 21,

2020). A request for transfer to home confinement is essentially a request for a change in the location of confinement rather than the length of confinement. Pursuant to 18 U.S.C. §§ 3621(b) and 3624(c), the BOP possesses the exclusive authority to determine the placement of prisoners. Id. at *5; see also United States v. Kluge, No. CR 17-61 (DWF), 2020 WL 209287, at *3 (D. Minn. Jan. 14, 2020). While the First Step Act expanded release opportunities for inmates, "it is BOP—not the courts—who decides whether home detention is appropriate" and Congress did not "mandate any particular home confinement decision." Brown, 2020 U.S. Dist. LEXIS, at *5–6 (quoting United States v. Yates, No. 15-40063-01-DDC, 2019 WL 1779773, *4 (D. Kan. Apr. 23, 2019)).

Further, even if courts had the authority to determine the placement of prisoners, Azure likely filed her motion for transfer to home confinement in the wrong court. Azure's motion is best construed as one made pursuant to 28 U.S.C. § 2241 because "she seeks relief affecting how her sentence is executed, i.e., serving her sentence in home confinement as opposed to confinement in prison to which she was sentenced, and not a reduction or release from her sentence (i.e. a compassionate release)." United States v. Taylor, No. CR 3:18-282, 2020 WL 2084974, at *5 (M.D. Pa. Apr. 30, 2020). A defendant may only seek § 2241 relief in the district in which she is in custody. Id. (citing United States v. Figueroa, 349 F. App'x 727, 730 (3d Cir. 2009)). This Court has no jurisdiction over Azure's motion, as she was not detained within this district at the time of filing.[9] Accordingly, the Court denies the motion for transfer to home confinement for lack of jurisdiction.[10]

---

[9] FCI Waseca is located within the District of Minnesota.

[10] The court notes, however, that in granting a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), a court may impose a period of home confinement as a condition of the defendant's term of supervised release. See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Sanchez,

6

**B.     Compassionate Release/Reduction in Sentence**

The Court turns now to Azure's motion for a reduction in sentence to time served, to the extent that such a motion has been made. Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). As one narrow exception to that rule, a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."[11] 18 U.S.C. § 3582(c)(1)(A)(i). The 18 U.S.C. § 3553(a) factors also must support the reduction. Id. The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

1.     Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Because 30

---

2020 WL 1933815, at *7 (D. Conn. Apr. 22, 2020) (reducing sentence to time served, increasing period of supervised release, and requiring home detention for first 13 months of that release); United States v. Burrill, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) (reducing sentence to time served and ordering the remaining portion of defendant's original term of imprisonment be "served as supervised release with the special condition that [defendant] shall be subject to home confinement").

[11] In lieu of extraordinary and compelling reasons, the statute also permits a sentence reduction where a defendant is at least 70 years old and certain additional conditions are met. See 18 U.S.C. § 3582(c)(1)(A)(ii). Azure is 33 years old, so this avenue for relief is foreclosed.

days have lapsed since Azure submitted her request for compassionate release, the Court will proceed to the merits.

        2.        Extraordinary and Compelling Reasons

The compassionate release statute does not define what constitutes "extraordinary and compelling reasons." Instead, Congress has dictated that the Sentencing Commission, through a policy statement, "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including . . . a list of specific examples." 28 U.S.C. § 994(t). To meet its statutory obligation, the Commission has promulgated USSG § 1B1.13. The policy statement itself largely mirrors the compassionate release statute's language. See USSG § 1B1.13(1)-(3).

More pertinent here is Application Note 1 to the policy statement. So long as a defendant does not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," the Application Note delineates four instances that demonstrate extraordinary and compelling reasons for compassionate release. USSG § 1B1.13(2); id. app. n.1. The first three circumstances set out in subdivisions (A) through (C) pertain to a defendant's medical condition, age, or family circumstances, respectively. See id. app. n.1(A)-(C). Subsection (D)—the catch-all provision—authorizes a sentence reduction when "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than . . . the reasons described in subdivisions (A) through (C)." Id. app. n.1(D). Azure's motion appears to rest on subdivision (D)'s catch-all provision.[12]

---

[12] When raising concerns about being at a higher risk for serious illness due to COVID-19, some inmates in compassionate release motions filed in this Court and in other courts have relied instead or additionally upon subdivision (A), arguing that they have a "serious physical or medical condition . . . that substantially diminishes [their] ability . . . to provide self-care within the environment of a correctional facility" in light of the circumstances created by the COVID-19

8

The Sentencing Commission, currently lacking a quorum, has yet to update § 1B1.13 since Congress amended § 3582(c)(1)(A). The policy statement still contemplates a motion for compassionate release originating solely from the BOP Director—clearly no longer the case. See USSG § 1B1.13. Seizing on this vacuum, several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges. See, e.g., United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); United States v. Cantu, Criminal Action No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019). Other district courts disagree. See, e.g., United States v. Lynn, CRIMINAL NO. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019); United States v. Gutierrez, No. CR 05-0217 RB, 2019 WL 2422601, at *2-3 (D.N.M. June 10, 2019); United States v. Shields, Case No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019). Indeed, this Court recently determined that § 3582(c)(1)(A)'s plain language mandates adherence to the policy statement as written. United States v. Rivera, Case No. 1:16-cr-00239, Doc. No. 61 (D.N.D. Nov. 25, 2019). Nevertheless, even assuming arguendo that the Court possesses the authority to find other extraordinary and compelling reasons for purposes of this motion, Azure does not meet the burden to demonstrate that such reasons exist here.

While sympathetic to Azure's concern regarding the effects of COVID-19 in the federal prison system, the Court does not find that her circumstances clear the high bar necessary to warrant a sentence reduction. As the Third Circuit Court of Appeals recently commented, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison

---

pandemic. See USSG § 1B1.13, app. n.1(A)(ii)(I). The Court would come to the same conclusion in this case if it were to consider the criteria in subdivision (A).

alone cannot independently justify compassionate release. . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  District courts have concluded similarly.  See, e.g., United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. . . .").

FCI Waseca has only reported one active case of COVID-19.  BOP: COVID-19 Update, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited July 13, 2020). Further, Azure has not demonstrated that she is currently at higher risk for serious illness if she were to contract COVID-19.  It is true that certain cancers and cancer treatments may render a person immunocompromised, thus placing that person at higher risk for serious complications from COVID-19.  See If You Are Immunocompromised, Protect Yourself From COVID-19, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html (last visited July 13, 2020); Common Questions About the New Coronavirus Outbreak, Am. Cancer Soc'y, https://www.cancer.org/latest-news/common-questions-about-the-new-coronavirus-outbreak.html (last visited July 13, 2020).  However, medical records show that Azure's cancer is in remission and that she has been cancer free for several years.  Azure provides no evidence how her prior cancer diagnosis cannot be adequately monitored and treated at the facility or evidence that her cancer has returned.  See United States v. Ramos, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *2 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release for a 41-year-old chronic and severe asthmatic where medical records showed no new asthma attacks and condition being treated by BOP); United States v. Gileno, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release for a defendant with high blood pressure, high cholesterol, asthma, and allergies who had

not shown that the facility was specifically unable to adequately treat his conditions). Finally, the BOP has undertaken an extensive response effort to prevent and mitigate the spread of COVID-19 in its facilities, including screening, visitation, and social distancing measures. See BOP Implementing Modified Operations, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 13, 2020). Accordingly, Azure's generalized assertions regarding the risk of contracting COVID-19 while incarcerated do not present an extraordinary and compelling reason for a sentence reduction.

### III.   CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, Azure's motion to reduce sentence or transfer to home confinement (Case No. 2:08-cr-89-5, Doc. No. 401; Case No. 3:17-cr-262, Doc. No. 39) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 14th day of July, 2020.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court